IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| MICHAEL MILLER<br>Appellant,<br><br>v.<br><br><br>COUNTY OF LANCASTER, ET. AL.,<br>Appellees. | Civ. No: 24-2934<br><br>(DC case: 1-24-CV-00014) |

## MEMORANDUM OF LAW

## IN SUPPORT OF MOTION TO VACATE JUDGMENTS AS VOID FOR

## FRAUD ON THE COURT

*Pursuant to Rule 60(d)(3) and Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322*

*U.S. 238 (1944)*

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................8

    A. Brief Statement ...........................................................8

    B. Legal Standard ............................................................8

    C. Roadmap of Fraud Devices in Sequence ...................................12

II. FRAUD ON THE DISTRICT COURT .............................................12

    1. Rule 12(b) Shell Game — Collapsing Jurisdiction and Merits.....................13

    2. Retaliatory Sanctions — Phase I (Pre-Dismissal)...........................16

    3. Fabricated Abstention — Phase I ..........................................18

    4. Systematic Mislabeling of Objections — Phase II (“*Goney* Fraud”) .............21

    District Court Wrap-Up — Structural Pattern of Fraud ......................24

III. FRAUD ON THE COURT OF APPEALS ........................................26

    5. Clerk Usurpation of Judicial Power — Phase I of Appellate Fraud..............26

    6. Engineered Appellate Record — Phase II of Appellate Fraud......................29

    7. Panel Fraud by Omission and Abdication — Phase III of Appellate Fraud ..31

    9. Panel Misrepresentation and False Findings — Phase V of Appellate Fraud37

    10. Misconduct Process Fraud — Phase VI of Appellate Fraud......................40

    Court of Appeals Wrap-Up — Structural Pattern of Fraud................44

V. A REPEATED SCHEME OF FRAUD ON THE COURT ...............................48

VI. RELIEF REQUESTED ......................................................50

# TABLE OF AUTHORITIES

**Cases**

1. *Anastasoff v. United States*, 223 F.3d 898 (8th Cir. 2000), vacated as moot
   (Nonprecedential labeling cannot insulate unconstitutional adjudication
   from review; supports challenge to "Not Precedential" panel opinion.)

2. *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989)
   (Fraud on the court exists where parties set in motion an unconscionable
   scheme that misleads the tribunal.)

3. *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)
   (Courts must independently confirm subject-matter jurisdiction; merits
   may not be reached unless jurisdiction is established.)

4. *Bell v. Hood*, 327 U.S. 678 (1946)
   (Failure to state a claim is a merits ruling, not jurisdictional; prevents
   collapsing Rule 12(b)(1) and 12(b)(6).)

5. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009)
   (Due process requires recusal when bias or conflicts create a probability
   of unfairness; supports misconduct process fraud argument.)

6. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800
   (1976)
   (Abstention is an "extraordinary and narrow exception" to the duty to
   exercise jurisdiction; fabricated abstention was improper.)

7. *Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993)
   (Fraud on the court includes concealment where officers have a duty to
   disclose or rule.)

8. *EEOC v. City of Long Branch*, 866 F.3d 93 (3d Cir. 2017)
   (Specific objections require de novo review; courts may not relabel them
   as "general.")

9. *Ex parte McCardle*, 74 U.S. (7 Wall.) 506 (1868)

   (Without jurisdiction, courts cannot proceed at all; supports voidness of judgments disclaiming jurisdiction while ruling merits.)

10. *Goldberg v. Kelly*, 397 U.S. 254 (1970)

    (Due process requires adjudication by lawful judicial officers, not clerks; supports challenge to clerk usurpation.)

11. *Goney v. Clark*, 749 F.2d 5 (3d Cir. 1984)

    (Only bare objections waive de novo review; supports argument that relabeling detailed objections as "generalized" was fraudulent.)

12. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56 (1982)

    (Notice of appeal divests district court of jurisdiction; supports argument that post-appeal sanctions were void.)

13. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)

    (Fraud on the court is a "deliberately planned and carefully executed scheme" that defiles the tribunal; judgments procured thereby must be vacated.)

14. *Herring v. United States*, 424 F.3d 384 (3d Cir. 2005)

    (Binding Third Circuit test for fraud on the court: intentional misconduct, by an officer, directed at the tribunal, deceiving the court.)

15. *In re Kensington Int'l Ltd.*, 368 F.3d 289 (3d Cir. 2004)

    (Recusal is required where ex parte influence undermines impartiality; supports misconduct process fraud.)

16. *Kelly v. Maxum Specialty Ins. Group*, 868 F.3d 274 (3d Cir. 2017)

    (Reaffirms Steel Co. sequencing: jurisdiction must precede merits.)

17. *Marshall v. Bd. of Educ.*, 575 F.2d 417 (3d Cir. 1978)

    (Judgments "not within the powers granted by law" are void ab initio.)

18. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90 (3d Cir. 1988)

    (Rule 11 sanctions must be resolved promptly; may not be held or revived as a weapon.)

19. *Mortensen v. First Fed. S&L Ass'n*, 549 F.2d 884 (3d Cir. 1977)

    (Distinguishes facial vs. factual jurisdictional challenges; threshold jurisdiction must be resolved before merits.)

20. *Nguyen v. United States*, 539 U.S. 69 (2003)

    (Judgment void when unauthorized persons participate in judicial role; supports clerk-usurpation argument.)

21. *Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978)

    (Fraud on the court requires "the most egregious misconduct," such as bribery or fabrication; supports limiting fraud doctrine to extreme misconduct like in this case.)

22. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007)

    (Even non-merits doctrines like forum non conveniens require jurisdiction first.)

23. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)

    (Courts may not bypass jurisdiction to reach the merits; jurisdiction is a threshold matter.)

24. *Toscano v. CIR*, 441 F.2d 930 (9th Cir. 1971)

    (Fraud on the court requires an "unconscionable scheme" designed to improperly influence the tribunal.)

25. *United States v. Providence Journal Co.*, 485 U.S. 693 (1988)

    (Only those with lawful authority may invoke judicial power; ultra vires clerk acts are null.)

26. *United States v. United Mine Workers*, 330 U.S. 258 (1947)

    (Orders issued without jurisdiction are usurped power and void.)

27. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010)

    (A judgment is void if entered without jurisdiction or inconsistent with due process.)

28. *Universal Oil Prods. v. Root Refining Co.*, 328 U.S. 575 (1946)

    (Courts have inherent power and duty to vacate judgments obtained by fraud on the court; fraud "defiles the temple of justice.")

29. *Zwickler v. Koota*, 389 U.S. 241 (1967)

    (Federal courts cannot abstain from adjudicating constitutional claims; abstention presupposes jurisdiction.)

## Statutes

30. 28 U.S.C. § 1331 – Federal-question jurisdiction.

31. 28 U.S.C. § 1343 – Civil rights jurisdiction.

32. 28 U.S.C. § 2201 – Declaratory Judgment Act (discretionary relief only where jurisdiction exists).

33. 28 U.S.C. § 636(b)(1)(C) – Requires de novo review of all specific objections to magistrate R&Rs.

34. 28 U.S.C. §§ 351–364 – Judicial Conduct and Disability Act (mandatory procedures for misconduct complaints).

## Rules

35. Fed. R. Civ. P. 5(b)(2)(E) – Permits withdrawal from electronic service.

36. Fed. R. Civ. P. 12(b)(1) – Motion to dismiss for lack of subject-matter jurisdiction.

37. Fed. R. Civ. P. 12(b)(6) – Motion to dismiss for failure to state a claim.

38. Fed. R. Civ. P. 60(b)(4) – Judgment is void if court lacked jurisdiction or violated due process.

39. Fed. R. Civ. P. 60(d)(3) – Preserves courts' inherent power to set aside judgments for fraud on the court.

40. Fed. R. App. P. 27 – Motion practice; summary action requires judicial vote.

41. Fed. R. App. P. 36 – Entry of judgment.

42. Fed. R. App. P. 45(b) – Clerks may not exercise judicial power.

## Constitutional Provisions

43. Article III, U.S. Constitution – Defines federal judicial power and limits courts to cases within jurisdiction.

44. First Amendment – Protects free speech and petition; under Zwickler, federal courts must adjudicate such claims.

45. Fourteenth Amendment – Protects due process and equal protection; supports claim that judgments entered without jurisdiction violate constitutional rights.

46. Due Process Clause (Fifth/Fourteenth Amendments) – Prohibits judgments without notice, hearing, or jurisdiction.

# I. INTRODUCTION

## A. Brief Statement

This motion seeks to vacate judgments that are void for fraud on the court —
misconduct so egregious that it defiles the tribunal and strips its decrees of lawful
authority. Plaintiff comes before this Court with respect for its institutional role
and reverence for its integrity. The problem is not the Court itself, but officers who
corrupted its processes, misrepresented Plaintiff's claims, and misrepresented
themselves.

In January 2024, Plaintiff filed a well-pleaded complaint raising First and
Fourteenth Amendment claims and invoking federal jurisdiction under 28 U.S.C.
§§ 1331 and 1343 (ECF 1). The Supreme Court has made clear that federal courts
have a non-discretionary duty to adjudicate such claims: "Congress imposed the
duty upon all levels of the federal judiciary to give due respect to a suitor's choice
of a federal forum for the hearing and decision of his federal constitutional
claims." *Zwickler v. Koota*, 389 U.S. 241, 248 (1967).

Instead of fulfilling that duty, officers of the court orchestrated a sequence of
devices to block adjudication. Counsel disguised merits arguments as jurisdictional
challenges, collapsing Rule 12(b)(1) into Rule 12(b)(6). When Plaintiff exposed
that ploy, counsel retaliated with a baseless Rule 11 motion demanding withdrawal
of his claims. When that failed, a magistrate fabricated abstention as a pretext for

dismissal, despite the absence of any parallel proceedings. When Plaintiff objected, counsel and the district judge mischaracterized his detailed objections as "generalized" to evade mandatory de novo review and dismissed the case in September 2024. At every turn, officers adapted the scheme — not to decide the case, but to ensure it was never decided.

The pattern carried forward on appeal. The Clerk of Court usurped judicial power by issuing a letter that froze briefing and diverted the appeal into "summary action," masquerading as a court order. Plaintiff objected, but was ignored, while counsel revived sanctions motions in the closed district court to smear his character on the record. For nine months no panel was assigned, no briefing schedule issued, and dozens of Plaintiff's filings were ignored. Finally, in July 2025, a panel emerged and affirmed the district court from chambers in a "not precedential" opinion that rested on a procedurally impossible ruling — one that disclaimed jurisdiction while simultaneously invoking abstention, in defiance of binding precedent Plaintiff had cited repeatedly.

Armed only with a facially defective jurisdictional objection, officers of the court forced Plaintiff, advocating pro se, through 19 months of litigation and more than 125 filings at enormous personal cost, solely to counter frauds they themselves committed upon the tribunal. They never convened a hearing. They never held a conference. They never allowed adversarial testing. They never

considered the substance of the complaint. Every ruling issued from chambers by fiat. These acts hollowed out Article III, defiled the Court's integrity, and eroded public trust in the rule of law. This was not error; it was an attack on the judicial function itself. It does not merely wrong one litigant. It strikes at the institutions of justice and undermines the promise of equal justice under law and the safeguard of liberty for all.

## B. Legal Standard

Fraud on the court is not ordinary error or party misconduct; it is wrongdoing by officers of the court that strikes at the integrity of the judicial process itself. It "defiles the court itself" and produces judgments "not within the powers granted by law." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245–46 (1944); *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946).

## 1. Elements of Fraud on the Court.

The Third Circuit recognizes fraud on the court where:

1. an *officer of the court* (judge, clerk, or attorney) engages in misconduct;

2. the misconduct is *intentional and egregious*, not mere error;

3. the acts are *directed at the tribunal itself*, not merely an opponent; and

4. the misconduct *deceives or corrupts the judicial process*, *preventing impartial adjudication*.

   *Herring v. United States*, 424 F.3d 384, 386–87 (3d Cir. 2005).

Other circuits articulate the same test. The Sixth Circuit in *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993), distilled the rule into five prongs: misconduct by an officer of the court, directed to the judicial machinery itself, intentional not mistaken, egregious, and successful in deceiving the tribunal.

## 2. Imperatives to Remedy Fraud on the Court

From these authorities follow imperatives that govern the Court's duty here:

- Voidness. Judgments procured by fraud on the court are void ab initio. They are not entitled to respect, enforcement, or preclusive effect. *Marshall v. Bd. of Educ.*, 575 F.2d 417, 422 (3d Cir. 1978); *United Student Aid Funds v. Espinosa*, 559 U.S. 260, 271 (2010).

- No discretion. Relief is not optional. Because fraud on the court undermines the legitimacy of judicial decrees, courts have an affirmative duty to vacate tainted judgments and purge the record of deception. *Hazel-Atlas*, 322 U.S. at 248–49.

- Timeless reach. Ordinary finality rules do not bar relief. Fraud on the court is exempt from limitations periods because it goes to the jurisdiction and integrity of the tribunal itself. *Hazel-Atlas*, at 248; Fed. R. Civ. P. 60(d)(3).

- Structural protection. Courts must act not only to remedy the particular injustice but also to protect the integrity of the judicial process for all litigants. "The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud." *Universal Oil*, 328 U.S. at 580.

## C. Roadmap of Fraud Devices in Sequence

The chronology that follows demonstrates how these principles apply here. At each stage of the litigation, when one device was exposed, officers of the court pivoted to another, ensuring Plaintiff's constitutional claims never reached Article III adjudication.

The steps are presented in the order they occurred, supported by docket citations (ECFs). Taken together, they trace a single, escalating scheme that displaced adversarial adjudication with chambers fiat and deception. Viewed in sequence, the pattern reveals a "deliberately planned and carefully executed scheme" (*Hazel-Atlas*, 322 U.S. at 245–46) that defiled the judicial process itself.

## II. FRAUD ON THE DISTRICT COURT

The scheme began in the district court, where officers of the court deployed the first devices to prevent adjudication of Plaintiff's constitutional claims. Instead of answering the complaint or testing it through adversarial process, counsel and

judges collapsed jurisdiction into merits, threatened sanctions, fabricated abstention, and mischaracterized Plaintiff's objections. Each maneuver was designed not to resolve the case on its merits, but to deceive the tribunal and insulate the fraud from review.

---

## 1. Rule 12(b) Shell Game — Collapsing Jurisdiction and Merits Claim.

In February 2024, defendants styled their challenges as Rule 12(b)(1) motions while actually pressing Rule 12(b)(6) merits arguments. In doing so, they misrepresented Plaintiff's complaint, reframing federal constitutional claims for declaratory relief (ECF 1) as "§ 1983 damages" or "RTKL relitigation" (ECFs 8, 16, 17, 21). This deception induced the court to collapse jurisdiction and merits, laying the foundation for the retaliatory devices that followed.

**Rule.**

- *Bell v. Hood*, 327 U.S. 678, 682 (1946) — failure to state a claim is a merits ruling, not jurisdictional.

- *Mortensen v. First Fed. S&L Ass'n*, 549 F.2d 884, 891–92 (3d Cir. 1977) — facial vs. factual attacks; threshold jurisdiction must be resolved first.

- *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) — no merits rulings unless and until jurisdiction is established.

- *Kelly v. Maxum Specialty Ins. Group*, 868 F.3d 274, 282–83 (3d Cir. 2017) — Third Circuit applies Steel Co. sequencing.

- *Zwickler v. Koota*, 389 U.S. 241, 248 (1967) — federal courts cannot abstain from constitutional claims; abstention presupposes jurisdiction.

- *Marshall v. Bd. of Educ.*, 575 F.2d 417, 422 (3d Cir. 1978); *United Student Aid Funds v. Espinosa*, 559 U.S. 260, 271 (2010) — judgments that both disclaim and exercise jurisdiction are void ab initio.

**Application.**

- Defendants' filings (ECFs 8, 16, 17, 21) were styled as "jurisdictional" but advanced 12(b)(6)-type arguments, reframing Plaintiff's declaratory-judgment claims as noncognizable "§ 1983 damages" or "RTKL relitigation."

- Plaintiff's responses (ECFs 24, 28) identified the mandatory Steel Co./Mortensen/Kelly sequence, showing that a facial jurisdictional attack cannot apply merits standards.

- Magistrate Carlson's R&R (ECF 59) disclaimed jurisdiction, yet in the same breath performed a sufficiency review under 12(b)(6) and invoked abstention. This was a procedural impossibility: abstention presupposes jurisdiction, and federal courts may not abstain from constitutional claims (*Zwickler*).

- Judge Wilson's order (ECF 64) adopted the R&R wholesale, thereby denying jurisdiction while simultaneously endorsing merits and abstention analysis.

### *Herring* **Elements.**

- Officer misconduct: Counsel misrepresented the pleadings; the magistrate and judge collapsed jurisdiction and merits.

- Intentional and egregious: Styling motions as "jurisdictional" while arguing merits was tactical deception.

- Directed at the tribunal: The misrepresentations were made to induce the magistrate and judge to treat a procedurally void path as lawful.

- Corruption of the process: The result was a judgment that both denied jurisdiction and reached the merits/abstention, defiling Article III sequencing and insulating defendants from adversarial adjudication.

### **Conclusion.**

The court denied jurisdiction while reaching the merits and abstention anyway. This contradiction was not mere error but an unconscionable scheme of the type condemned in *Toscano* and the "most egregious misconduct" reserved by *Rozier*. Under *Steel Co.*, *Mortensen*, *Kelly*, *Bell*, and *Marshall/Espinosa*, such a judgment lies outside the powers granted by law and is void ab initio. This jurisdiction/merits collapse was the opening move in a deliberate fraud on the court, laying the

platform for the retaliatory sanctions (Step 2) and fabricated abstention (Step 3) that followed.

---

**2. Retaliatory Sanctions — Phase I (Pre-Dismissal)**

**Claim.**

After Plaintiff exposed the Rule 12(b) fraud, County counsel escalated by weaponizing Rule 11. On April 16, 2024, counsel served a sanctions notice demanding $25,000, then on May 8 filed a motion seeking $30,000 (ECF 48). The motion identified no frivolous filings — Plaintiff's complaint (ECF 1) and oppositions (ECFs 24, 28) properly invoked federal jurisdiction and applied controlling law. Plaintiff's opposition (ECF 53) demonstrated that the motion lacked jurisdiction, standing, and factual basis. It was not a Rule 11 motion at all, but a retaliatory device aimed at punishing a vulnerable pro se litigant for pressing valid claims.

**Rule.**

- *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 100 (3d Cir. 1988) — Rule 11 motions must be resolved promptly; courts may not hold them as tactical weapons.

- *Marshall v. Bd. of Educ.*, 575 F.2d 417, 422 (3d Cir. 1978) — courts cannot disclaim jurisdiction while sustaining sanctions tied to the merits.

- *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) — once a notice of appeal is filed, the district court is divested of jurisdiction.

- *Hazel-Atlas*, 322 U.S. at 246; *Herring*, 424 F.3d at 386–87 — fraud on the court occurs when officers create a false record of abuse to deceive the tribunal.

**Application.**

- Magistrate Carlson did not resolve the jurisdictional challenge or the sanctions motion. Instead, he held both in suspension.

- In his R&R (ECF 59), he admitted the sanctions were *"inextricably intertwined with the merits"* (p. 18 n.2), which made them non-collateral, yet he deferred ruling anyway.

- On September 30, Judge Wilson dismissed for lack of jurisdiction under Rule 12(b)(1) but simultaneously referred sanctions back to the magistrate (ECF 64 at 5). That referral was doubly defective: it contradicted the disclaimer of jurisdiction (*Marshall*) and ensured sanctions would remain pending after Plaintiff noticed appeal, despite *Griggs* divesting the district court of authority.

- Carlson's delay also violated *Pensiero*, which requires Rule 11 motions to be decided promptly and forbids "holding" them in reserve as a weapon.

**Herring Elements.**

- **Officer misconduct:** Counsel filed a baseless sanctions motion; the magistrate and judge sustained it by delay and referral.

- **Intentional and egregious:** The sanctions device was retaliatory, aimed at punishing Plaintiff for exposing the Rule 12 fraud.

- **Directed at the tribunal:** Officers presented the motion to create a false appearance that Plaintiff's filings were sanctionable.

- **Corruption of the process:** By retaining a live sanctions threat in a closed and divested case, officers embedded a false record of misconduct into the tribunal itself.

**Conclusion.**

The pre-dismissal sanctions campaign was not lawful process but a retaliatory fraud. Officers deliberately preserved a meritless motion — even after disclaiming jurisdiction and after divestiture — so that it could be revived later. As Step 8 confirms, the sanctions motion was not abandoned but deliberately kept alive to shadow Plaintiff into the appellate phase, ensuring that retaliation and reputational smears became part of the judicial record.

---

## 3. Fabricated Abstention — Phase I

**Claim.**

After delaying rulings on both jurisdiction and sanctions, the magistrate pivoted to

a new device: a Report and Recommendation (ECF 59) that declared "federal courts generally lack subject-matter jurisdiction" while in the same breath invoking discretionary abstention. This was procedurally impossible — abstention presupposes jurisdiction. The maneuver allowed officers of the court to avoid adjudicating Plaintiff's constitutional claims by fabricating an abstention ground that could not lawfully exist.

**Rule.**

- *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) — abstention is a narrow exception to the duty to exercise jurisdiction.

- *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134–35 (3d Cir. 2014) — DJA abstention applies only when parallel state proceedings exist.

- *Zwickler v. Koota*, 389 U.S. 241, 248 (1967) — federal courts cannot abstain from hearing constitutional claims.

- *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) — jurisdiction must be decided first, before merits or abstention.

- *Marshall v. Bd. of Educ.*, 575 F.2d 417, 422 (3d Cir. 1978); *Espinosa*, 559 U.S. 260, 271 (2010) — judgments that disclaim jurisdiction yet exercise it are void ab initio.

**Application.**

- On June 20, 2024, Magistrate Carlson issued R&R #2 (ECF 59). He simultaneously disclaimed jurisdiction, conducted a Rule 12(b)(6) sufficiency review, and invoked abstention under *Reifer*.

- This was not adjudication but ipse dixit: abstention without jurisdiction is a nullity, and invoking abstention after disclaiming jurisdiction violated the *Steel Co.* sequencing requirement.

- It also squarely defied *Zwickler*, because Plaintiff's complaint raised federal constitutional claims, and the Supreme Court has held such claims cannot be evaded by abstention.

- The defect was compounded because abstention was raised sua sponte, without briefing, and presented to the district judge as though lawful.

- This pivot, coming only after jurisdiction and sanctions had been held in suspension, demonstrates deliberate design rather than error.

### *Herring* Elements.

- Officer misconduct: Magistrate Carlson fabricated an abstention ground after disclaiming jurisdiction.

- Intentional and egregious: The sua sponte invocation of abstention, without briefing and contrary to precedent, was a deliberate device.

- Directed at the tribunal: The R&R presented an impossible contradiction as if it were lawful adjudication, deceiving the district judge and record.

- Corruption of the process: By disclaiming jurisdiction while invoking abstention, officers replaced Article III adjudication with a fabricated ground, ensuring Plaintiff's constitutional claims would not be reached.

**Conclusion.**

The R&R was fraud on the court: officer misconduct, intentional, aimed at deceiving the tribunal, and corrupting adjudication. By disclaiming jurisdiction yet invoking abstention sua sponte without briefing, the magistrate created a fabricated ground that satisfied every *Herring* element. A judgment that both denies jurisdiction and invokes abstention is structurally void under *Marshall* and *Espinosa*. And this fabricated abstention did not stand alone — it was immediately reinforced by a second device, the systematic mislabeling of Plaintiff's detailed objections as "generalized," ensuring the fraud would survive Article III review.

---

### 4. Systematic Mislabeling of Objections — Phase II ("*Goney* Fraud")

**Claim.**

Having fabricated abstention in Phase I, officers then deployed Phase II — the "*Goney* Fraud" — systematically mislabeling Plaintiff's specific objections as "generalized" to launder the magistrate's defective rulings into final judgments without Article III review. This device was not an isolated maneuver but a repeated

scheme, misapplying *Goney v. Clark*, 749 F.2d 5 (3d Cir. 1984), across two separate proceedings to block de novo review and prove deliberate design. Rule.

- *Goney v. Clark*, 749 F.2d 5, 6 (3d Cir. 1984) — only a bare, general objection (e.g., "I object") waives de novo review.

- 28 U.S.C. § 636(b)(1)(C) — requires de novo review of all specific written objections.

- *EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) — specific objections mandate de novo review; courts may not relabel them as "general."

**Application.**

- Round One — Default/Extension Proceedings. Magistrate Carlson recommended that default against OOR be set aside (ECF 37). Plaintiff filed specific objections citing controlling law (ECF 40), including *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192 (3d Cir. 1984). Defense counsel branded the objections "generalized" (ECF 49). Plaintiff rebutted with a detailed table mapping each objection to the R&R (ECF 52). Judge Wilson nonetheless ruled that Plaintiff's objections were "general in nature," cited *Goney*, and adopted the R&R without de novo review (ECF 55).

- Round Two — Dismissal/Abstention Proceedings. Magistrate Carlson issued an R&R invoking abstention while disclaiming jurisdiction (ECF 59). Plaintiff filed detailed objections (ECF 60) citing *Mortensen*, *Reifer*, *Wilton*, and § 636(b)(1)(A). Defense counsel again branded the objections "generalized" (ECF 62). Judge Wilson adopted the R&R wholesale, accepted the "generalized" smear, and dismissed the complaint without de novo review (ECF 64).

### *Herring* Elements.

- Officer misconduct: Defense counsel twice mischaracterized Plaintiff's detailed objections as "generalized," and Judge Wilson ratified the misrepresentation both times.

- Intentional and egregious: The repetition across two distinct proceedings shows deliberate design, not accident.

- Directed at the tribunal: Each mischaracterization was advanced to induce Article III judges to forego their statutory duty of de novo review.

- Corruption of the process: By laundering defective R&Rs into final judgments without Article III review, the device corrupted the adjudicatory machinery itself.

### Conclusion.

The systematic mislabeling of Plaintiff's objections was not oversight but a

"deliberately planned and carefully executed scheme" (*Hazel-Atlas*, 322 U.S. at 246). Each time Plaintiff filed detailed objections, officers relabeled them as "generalized" to insulate fraudulent rulings from Article III review. This deliberate repetition across distinct proceedings independently satisfies every element of *Herring* and renders the judgments void ab initio.

---

**District Court Wrap-Up — Structural Pattern of Fraud Claim.**

Steps 1 through 4 reveal not isolated mistakes but a deliberate sequence of devices that hollowed out adjudication in the district court. Defense counsel twisted Rule 12(b) into a jurisdiction/merits collapse. Counsel then escalated by filing retaliatory sanctions motions. The magistrate fabricated abstention without jurisdiction. Counsel and the judge systematically mislabeled Plaintiff's objections as "generalized" to block de novo review. These actors did not resolve disputes — they deceived the tribunal into treating contradictions and impossibilities as lawful rulings. The deeper wrong is that the district court issued a judgment that bore the form of adjudication but rested on fraud.

**Rule.**

- *Hazel-Atlas*, 322 U.S. at 246 — fraud on the court is a "deliberately planned and carefully executed scheme" that defiles the tribunal itself.

- *Herring*, 424 F.3d at 386–87 — elements: officer misconduct, intentionality, direction at the tribunal, corruption of process.
- *Marshall*, 575 F.2d at 422 — judgments "not within the powers granted by law" are void ab initio.

**Application.**

- **Jurisdiction/merits collapse.** Defense counsel mischaracterized Plaintiff's claims. Magistrate Carlson and Judge Wilson disclaimed jurisdiction while simultaneously applying merits standards and invoking abstention — a structural impossibility that they laundered into the record as if lawful.
- **Retaliatory sanctions.** County counsel filed Rule 11 sanctions motions. Magistrate Carlson and Judge Wilson preserved and manipulated them, not to remedy frivolous filings, but to keep alive a false narrative of misconduct.
- **Fabricated abstention.** Magistrate Carlson invoked abstention sua sponte after disclaiming jurisdiction, creating an impossible ground to evade constitutional claims. Judge Wilson adopted it wholesale.
- **Systematic mislabeling.** Defense counsel twice branded Plaintiff's detailed objections as "generalized." Judge Wilson accepted the misrepresentation both times, adopting defective R&Rs without de novo review.

**Conclusion.**

Taken together, Steps 1–4 show every element of *Herring*: officers of the court —

counsel, magistrate, and judge — acted intentionally, directed their misconduct at the tribunal, and corrupted the judicial process. The district court did not merely err; it became an instrument of deception. It issued judgments that were jurisdictionally impossible and procedurally void, yet dressed as lawful adjudication. The wrong here was not only against Plaintiff but against the court's own role as guardian of justice. The tribunal's integrity was defiled, and that foundation of fraud carried forward into the appellate proceedings that followed.

## III. FRAUD ON THE COURT OF APPEALS

The scheme continued in the Court of Appeals, where officers compounded the district court fraud by usurping judicial power, freezing briefing, and engineering the record to erase Plaintiff's objections. When Plaintiff exposed these defects through repeated filings, officers concealed the misconduct by refusing to assign a panel, ignoring motions, and allowing counsel to reintroduce the false "generalized objections" narrative. The appellate process was thereby displaced with clerk directives, omissions, and misrepresentations, setting the stage for retaliatory sanctions and a "not precedential" opinion that ratified the fraud.

---

### 5. Clerk Usurpation of Judicial Power — Phase I of Appellate Fraud

**Claim.**

The appellate process was corrupted at the outset when the Clerk of Court exercised dispositive judicial power by issuing ECF 11-1, styled as an "order of the Court," halting briefing and diverting the case to "summary action" without any panel action or authority. This was not a ministerial mistake but the substitution of clerk fiat for judicial adjudication.

**Rule.**

- *Fed. R. App. P. 45(b) — clerks may not exercise judicial power.*

- *3d Cir. L.A.R. 27.4(b); I.O.P. 10.6 — briefing cannot be stayed and summary action requires a judicial vote.*

- *Nguyen v. United States, 539 U.S. 69, 80–81 (2003) — judgment void when unauthorized participant exercises judicial role.*

- *United States v. Providence Journal Co., 485 U.S. 693, 709 (1988) — only those with lawful authority may invoke judicial power; ultra vires acts are null.*

- *Goldberg v. Kelly, 397 U.S. 254, 267 (1970) — due process requires adjudication by judges, not staff directives.*

**Application.**

On October 29, 2024, two weeks after Plaintiff noticed appeal, Clerk Patricia Dodszuweit issued a letter (3d Cir. ECF 11-1) declaring: "This appeal has been

listed for possible summary action by a panel of this Court, pursuant to I.O.P. 10.6… Issuance of the briefing schedule will be stayed pending action by the Court." The letter bore only the Clerk's signature (via assistant) yet presented itself as an order of "the Court."

This was ultra vires on its face: L.A.R. 27.4(b) forbids staying briefing, and I.O.P. 10.6 requires referral and a unanimous judicial vote, none of which occurred. ECF 11-1 issued without notice or adversarial process, and Plaintiff's motions to strike (3d Cir. ECFs 12–16) were ignored. By silence, the judges allowed the deception that ECF 11-1 was lawful process. The final panel decision (3d Cir. ECFs 59–60) incorporated this usurpation by affirming without briefing or argument.

*Herring* Elements.

- Officer misconduct: The Clerk exercised dispositive judicial power, masquerading as the Court.

- Intentional and egregious: This was not clerical error but a substantive ruling outside any delegation.

- Directed at the tribunal: Styled as "the Court's" order, the directive deceived both the record and the reviewing tribunal.

- Corruption of the process: By halting briefing without authority and ignoring objections, officers displaced Article III adjudication with clerk fiat, laundering it into the appearance of lawful procedure.

**Conclusion.**

ECF 11-1 itself was fraud on the court. Plaintiff objected repeatedly (3d Cir. ECFs 12–16), preserving the defect, yet officers ignored those filings, allowing clerk fiat to masquerade as judicial process. This usurpation corrupted the appellate machinery and set the stage for Step 6, where counsel and judges exploited the frozen record to inject and ratify the false "generalized objections" narrative.

---

**6. Engineered Appellate Record — Phase II of Appellate Fraud**

**Claim.**

After the Clerk's ultra vires directive froze briefing (Step 5), officers compounded the fraud by engineering the appellate record. Judges ignored Plaintiff's motions to strike, while counsel injected the false "generalized objections" narrative from the district court. The result was a record stripped of Plaintiff's preserved objections and overwritten with a fabricated account.

**Rule.**

- *Hazel-Atlas, 322 U.S. at 246 (fraud = false record, defiles the court).*

- *Demjanjuk v. Petrovsky, 10 F.3d 338, 348 (6th Cir. 1993) (fraud by concealment, duty to disclose/rule).*

- *Herring v. United States, 424 F.3d 384, 386–87 (3d Cir. 2005) (officer misconduct, intent, direction at tribunal, corruption).*

**Application.**

- ECF 11-1 (Oct. 29, 2024): Clerk froze briefing by letter styled as an "order of the Court," presenting the district court's contradictory judgment (ECF 64) as valid and unassailable.

- ECFs 12–16: Plaintiff immediately objected and moved to strike, showing the directive was ultra vires. Judges ignored these motions, concealing defects in violation of their duty to rule (*Demjanjuk*).

- ECF 17 (Nov. 2024): Counsel for the Attorney General's office filed a brief falsely asserting Plaintiff's objections were "generalized" — echoing the tactic already used in district court.

- ECF 19: Plaintiff rebutted with record tables and legal authority, proving his objections were specific and detailed.

By this point, the fraud sequence was complete: the Clerk's usurpation (Step 5) created a vacuum by halting briefing; judges perpetuated the concealment by refusing to strike the directive or rule on motions; and counsel exploited the frozen record to insert a false narrative.

***Herring* Elements.**

- Officer misconduct: Clerk usurped judicial power; counsel misrepresented objections; judges concealed defects by silence.

- Intentional and egregious: This was not mistake but repetition of a device already used in the district court.

- Directed at the tribunal: Each step aimed to steer the appellate record to show Plaintiff's objections as forfeited.

- Corruption of the process: Freezing briefing, ignoring motions, and overwriting the record eliminated adversarial review and corrupted the appellate machinery itself.

**Conclusion.**

By the end of ECF 19, officers of the court had deliberately engineered the record. Plaintiff's specific objections were erased through clerk fiat, ignored when challenged, and overwritten by counsel's misrepresentation. This satisfied every element of *Herring*: fraud that prevented the Court from adjudicating Plaintiff's constitutional claims on the merits.

---

## 7. Panel Fraud by Omission and Abdication — Phase III of Appellate Fraud Claim.

Next, for nine months, officers provided no panel assignment, no briefing

schedule, and no oral argument. Despite repeated motions, the judges issued no rulings. By silence and omission, officers created the false appearance of a lawful appellate process while concealing their abdication of judicial duty.

**Rule.**

- *Demjanjuk, 10 F.3d at 348 — fraud by omission where judges have a duty to rule.*

- *Marshall v. Bd. of Educ., 575 F.2d 417, 422 (3d Cir. 1978) — judgment void if "not within powers granted by law."*

- *United States v. Nixon, 418 U.S. 683, 704 (1974) — the integrity of the judicial system depends on adjudication of cases properly before the court.*

- *Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998) — jurisdiction must be decided first.*

- *Goldberg v. Kelly, 397 U.S. 254, 267 (1970) — due process requires meaningful notice and an opportunity to be heard.*

**Application.**

- ECFs 12–16 (Oct.–Nov. 2024): Plaintiff objected to the Clerk's ultra vires directive and moved to strike. No ruling issued.

- ECF 23 (Dec. 18, 2024): Plaintiff moved for emergency injunctive relief, showing jurisdictional contradictions and sanctions abuses. No ruling issued.

- ECF 30 (Jan. 2025): Plaintiff moved for sanctions against opposing counsel for misrepresentation. Again, no ruling issued.

- Oct. 2024 – July 2025: At no point was a merits panel formally assigned, a briefing schedule entered, or oral argument held. The case drifted under clerk fiat until resolved "from chambers."

This silence was not docket management but abdication. Article III imposes a constitutional duty to adjudicate cases properly before the court (*Nixon*, *Steel Co.*). By refusing to rule on Plaintiff's objections and motions, the panel concealed defects that cut to jurisdiction and due process. This omission completed the laundering of the engineered record (Step 6) into judgment, ensuring that live disputes never reached adversarial testing.

### *Herring* Elements.

- Officer misconduct: Judges failed to assign a panel, issue briefing, or rule on live motions.

- Intentional and egregious: The omissions persisted for nine months despite repeated filings documenting violations.

- Directed at the tribunal: By omission, officers deceived the record itself, making it appear that Plaintiff's objections and motions had no merit or were abandoned.

- Corruption of the process: Adjudication was replaced by abdication, erasing objections from review and laundering fraud into procedural regularity.

**Conclusion.**

By omission and abdication, the appellate panel nullified the adversarial process itself. The record was left to suggest uncontested dismissal when in fact Plaintiff's objections and motions were live and unresolved. This concealment satisfied every element of *Herring* and rendered the appellate proceedings void ab initio.

---

### 8. Retaliatory Sanctions — Phase IV of Appellate Fraud

**Claim.**

While Plaintiff's appeal was pending, County counsel and Magistrate Carlson revived the same retaliatory sanctions device that had been unlawfully preserved in the district court. On December 17, 2024, counsel filed new sanctions papers in the closed case (ECFs 67–68). On March 3, 2025, Carlson issued an order (ECFs 69–70) that nominally denied sanctions but smeared Plaintiff as "erratic" and "quixotic," embedding reputational harm into the record during the appeal. The maneuver showed that the sanctions motion was never abandoned but deliberately sustained as a continuing weapon.

**Rule.**

- *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 100 (3d Cir. 1988) — sanctions must be resolved promptly; they may not be held in reserve or revived tactically.

- *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) — once appeal is noticed, jurisdiction divests from the district court.

- *In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 387–88 (3d Cir. 1997) — sanctions imposed without jurisdiction constitute abuse of judicial power.

- *Hazel-Atlas*, 322 U.S. at 246; *Herring*, 424 F.3d at 386–87 — fraud on the court exists where officers inject false narratives or act ultra vires to corrupt the record.

**Application.**

- Apr. 16, 2024: County served a Rule 11 notice demanding $25,000.

- May 8, 2024: County filed the sanctions motion (ECF 48). Carlson admitted it was "inextricably intertwined with the merits" (ECF 59 n.2) but deferred ruling.

- Sept. 30, 2024: Judge Wilson dismissed for lack of jurisdiction but referred sanctions back in a closed case (ECF 64), unlawfully preserving the motion past divestiture.

- Dec. 17, 2024: During appeal, County counsel filed new sanctions papers (ECFs 67–68) and sent Plaintiff a cover email insisting the Middle District

"still has jurisdiction." Counsel cited out-of-circuit dicta and mischaracterized *Pensiero* to argue the motion was collateral — despite Carlson's admission that it was tied to the merits. This was not a legal argument but bait, designed to induce Plaintiff to waive jurisdictional objections by fighting the motion on the merits in a divested case. Plaintiff refused service and stood on *Griggs*.

- Mar. 3, 2025: Carlson issued an order (ECFs 69–70). Though styled as a denial, it castigated Plaintiff for not defending on the merits, declaring that his "persistence approaches sanctionable misconduct" and branding him "erratic," "feckless," and "quixotic." These reputational attacks were not incidental. They punished Plaintiff for asserting the correct jurisdictional rule and embedded a false narrative of misconduct into the appellate record.

### *Herring* Elements.

- **Officer misconduct:** Counsel misrepresented jurisdiction to bait Plaintiff; the magistrate revived a void motion and smeared Plaintiff for refusing to fight it.

- **Intentional and egregious:** The maneuver was calculated, continuing the sanctions campaign begun in Step 2.

- **Directed at the tribunal:** The filings and order were styled as lawful proceedings, deceiving the record into reflecting misconduct by Plaintiff.

- **Corruption of the process:** By reviving sanctions without jurisdiction and converting Plaintiff's correct stance into reputational slander, officers corrupted the record itself.

**Conclusion.**

The appellate sanctions proceedings were not new or collateral — they were the unlawful revival of the same retaliatory device first launched in May 2024 (Step 2). The December 2024 bait email and March 2025 smear complete the fraud loop: counsel tried to trap Plaintiff into fighting on the merits in a divested case, and when he refused, the magistrate smeared him for standing on jurisdiction. This continuous sanctions campaign — spanning both district and appellate phases — violated *Pensiero* and *Griggs* and satisfied every element of *Herring*. It was not process but fraud, embedding false narratives of misconduct into the record to undermine both the litigant and the tribunal.

---

**9. Panel Misrepresentation and False Findings — Phase V of Appellate Fraud Claim.**

After months of silence, the appellate panel issued a "Not Precedential" memorandum and judgment (3rd Cir. ECFs 59–60) that affirmatively misrepresented the record, ignored live motions, and concealed the retaliatory sanctions campaign. Instead of adjudicating Plaintiff's constitutional claims and

jurisdictional objections, the panel repeated false narratives and contradictions, laundering omissions and clerk fiat into the appearance of lawful adjudication.

**Rule.**

- *Demjanjuk*, 10 F.3d at 348 (fraud by concealment/misrepresentation).

- *Marshall*, 575 F.2d at 422 (judgment void if beyond lawful power).

- *Long Branch*, 866 F.3d at 100 (specific objections require de novo review).

- *Hazel-Atlas*, 322 U.S. at 246 (fraud = false narratives that defile tribunal).

- *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118–19 (1st Cir. 1989) (fraud on the court exists when a party sets in motion an "unconscionable scheme" that misleads the tribunal and induces reliance on false matter).

- *Anastasoff v. United States*, 223 F.3d 898, 904–05 (8th Cir. 2000), vacated as moot (reasoning that nonprecedential labeling is unconstitutional because Article III requires adherence to precedent).

**Application.**

- Jurisdictional contradictions ignored. Plaintiff showed the district court both disclaimed jurisdiction and ruled on merits/abstention (ECFs 59, 64). The panel disregarded this impossibility and affirmed as though jurisdiction had been properly resolved.

- Objections misrepresented. Despite Plaintiff's rebuttal (ECF 19), the panel repeated the false claim that Plaintiff's objections (ECF 60) were

"generalized" (ECF 59 at 6–7). By ratifying counsel's narrative, the panel directly contradicted *Long Branch*, which requires de novo review of specific objections.

- Motions omitted. Plaintiff's objections to the Clerk's directive (ECFs 12–16), emergency motion for injunctive relief (ECF 23), and motion for sanctions against counsel (ECF 30) were never addressed. Silence on these live motions concealed jurisdictional defects and clerk usurpation.

- Sanctions campaign concealed. The panel made no mention of the ultra vires sanctions proceedings in the closed district court (ECFs 67–70), thereby hiding retaliatory misconduct from the appellate record.

- Controlling precedent disregarded. Plaintiff cited *Steel Co.*, *Mortensen*, *Reifer*, *Kelly*, and *Zwickler*. The panel's memorandum ignored each, dismissing claims as "vague and conclusory" without applying the governing standards.

- False narrative laundered into judgment. Like the tribunal in *Aoude*, the panel repeated a disproven narrative, converting it into the basis of judgment. And by stamping its opinion "Not Precedential," it attempted to evade accountability — exactly the defect *Anastasoff* identified as unconstitutional under Article III.

***Herring* Elements.**

- Officer misconduct: Judges issued an opinion misrepresenting the record and omitting live disputes.

- Intentional and egregious: The opinion repeated narratives already disproved by Plaintiff's filings.

- Directed at the tribunal: Styled as lawful adjudication, the memorandum deceived the record and foreclosed review.

- Corruption of the process: By repeating falsehoods, ignoring motions, concealing sanctions, and insulating the result with a "Not Precedential" label, the panel displaced Article III adjudication with deception.

**Conclusion.**

The July 2025 memorandum and judgment (ECFs 59–60) were not mere error but fraud on the court. By affirming without briefing, ignoring objections, concealing live motions, and misrepresenting the record, the panel satisfied every element of *Herring* and "defiled the court itself" within the meaning of *Hazel-Atlas*. As in *Aoude*, the judgment rested on a fraudulent narrative; as in *Anastasoff*, its "Not Precedential" label cannot insulate constitutional defects. Under *Marshall* and *Espinosa*, the judgment is void ab initio.

---

**10. Misconduct Process Fraud — Phase VI of Appellate Fraud**

**Claim.**

Running parallel to the appellate proceedings, Plaintiff invoked Congress's statutory mechanism for judicial accountability by filing verified complaints under the Judicial Conduct and Disability Act, 28 U.S.C. §§ 351–364. Instead of following the Act's procedures, the Chief Judge and Judicial Council nullified the oversight process itself — misclassifying complaints, rubber-stamping dismissals without reasons or recorded votes, imposing an ultra vires Rule 10 filing ban, and assigning a conflicted judge to dismiss collateral review. By corrupting Congress's exclusive safeguard, officers ensured that no independent check could expose the underlying fraud.

**Rule.**

- *28 U.S.C. § 352 — a chief judge may dismiss only if the complaint is frivolous or merits-related, and must issue written reasons.*

- *28 U.S.C. § 353 — allegations of bias, retaliation, clerk usurpation, or abuse of process must be referred to a special committee.*

- *28 U.S.C. § 354 — the Judicial Council must provide written reasons and recorded votes.*

- *28 U.S.C. § 358(c) — complainants may petition the Judicial Conference; councils lack authority to restrict or pre-screen filings.*

- *In re Kensington Int'l Ltd., 368 F.3d 289, 309–10 (3d Cir. 2004) — impartiality requires recusal where ex parte influence or conflicts undermine justice or its appearance.*

- *Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 883–84 (2009) — due process is violated when judges sit on matters in which they are personally implicated.*

- *Hazel-Atlas, 322 U.S. at 246; Herring, 424 F.3d at 386–87 — usurpation of statutory authority and concealment of bias constitute fraud on the court.*

**Application.**

- Dec. 2024–May 2025: Plaintiff filed multiple verified complaints under § 351, alleging bias, clerk usurpation, jurisdictional manipulation, and retaliation — categories that required referral under § 353.

- Chief Judge Hardiman: Misclassified non-merits complaints as "merits-related" or "frivolous" and dismissed them at screening under § 352, issuing "memorandum opinions" not authorized by the statute.

- Judicial Council (May 13, 2025): Chaired by Judge Shwartz, the Council rubber-stamped Hardiman's dismissals in one-page orders without recorded votes or independent reasons, violating § 354.

- June 27, 2025: The Council imposed a Rule 10 filing ban, barring future complaints without notice, findings, or statutory authority — in direct violation of § 358(c).

- Aug. 2025: When Plaintiff challenged the ban in EDPA Case No. 5:25-cv-4633, the case was assigned to Judge Leeson, who was named in the complaints. He refused recusal and dismissed sua sponte, echoing the Council's misclassifications and compounding the conflict in violation of *Caperton*.

### *Herring* Elements.

- Officer misconduct: Chief Judge misclassified complaints; Council imposed an ultra vires ban; a conflicted judge dismissed collateral review.

- Intentional and egregious: These were not oversights but coordinated measures to shield officers from oversight.

- Directed at the tribunal: Each act was styled as a lawful Council or court order, deceiving the record into treating unlawful measures as valid.

- Corruption of the process: By nullifying Congress's oversight mechanism, officers stripped away the statutory safeguard for impartiality, ensuring the underlying fraud could not be corrected.

### Conclusion.

The misconduct process fraud was the capstone of the appellate-level fraud arc. By

misclassifying complaints, rubber-stamping dismissals, imposing a void Rule 10 ban, and assigning conflicted judges to dismiss collateral review, officers corrupted the only statutory oversight mechanism available. This satisfied every element of *Herring* and compounded the fraud already embedded in district and appellate proceedings. Under *Hazel-Atlas*, *Kensington*, and *Caperton*, this usurpation is not error but fraud on the court, rendering the judgments void ab initio.

---

**Court of Appeals Wrap-Up — Structural Pattern of Fraud Claim.**

Steps 5 through 10 reveal not isolated missteps but a coordinated sequence of devices that hollowed out appellate adjudication. The Clerk usurped judicial power. Counsel engineered the record. Judges withheld rulings and concealed motions. Magistrates and counsel revived sanctions to smear Plaintiff. The panel misrepresented the record. The Judicial Council dismantled oversight. Together, these actors displaced Article III review with clerk fiat, silence, and false narratives. The deeper wrong is that the Court of Appeals ratified these devices as if they were lawful adjudication.

**Rule.**

- *Hazel-Atlas*, 322 U.S. at 246 — fraud on the court is a "deliberately planned and carefully executed scheme" that defiles the tribunal itself.

- *Herring*, 424 F.3d at 386–87 — elements: officer misconduct, intentionality, direction at the tribunal, corruption of process.

- *Marshall*, 575 F.2d at 422 — judgments "not within the powers granted by law" are void ab initio.

**Application.**

- **Clerk usurpation and record engineering (Steps 5–6).** The Clerk seized judicial power, froze briefing, and altered the record to erase Plaintiff's objections and insert a false narrative.

- **Panel omission (Step 7).** For nine months, the judges refused to assign a panel, issue a schedule, or rule on motions, concealing their abdication of duty.

- **Retaliatory sanctions (Step 8).** County counsel and Magistrate Carlson revived sanctions in a closed case after divestiture and used them to smear Plaintiff's character in the record.

- **Panel misrepresentation (Step 9).** The appellate judges issued an opinion that repeated false narratives, ignored live motions, and concealed the sanctions campaign.

- **Misconduct-process fraud (Step 10).** The Chief Judge and Judicial Council misclassified misconduct complaints, rubber-stamped dismissals, and

imposed an unlawful filing ban, ensuring that no independent check could expose the fraud.

**Conclusion.**

Taken together, Steps 5–10 show every element of *Herring*: officers of the court acted intentionally, directed their misconduct at the tribunal, and corrupted the judicial process. The Court of Appeals did not merely overlook error — it lent its authority to clerk fiat, omissions, and misrepresentations. The fraud did not just injure Plaintiff; it defiled the Court itself, undermining public trust in the institution charged with safeguarding justice and liberty. This corruption at the appellate level confirmed the fraud that began in the district court and carried it forward to final judgment.

## IV. CONCLUSION: THE PRETENSE OF ADJUDICATION, THE REALITY OF FRAUD

Viewed together, Steps 1–10 form a single arc of fraud. Each time Plaintiff exposed one device, officers of the court pivoted to another. Counsel twisted Rule 12(b). Magistrates and judges collapsed jurisdiction into merits. Counsel threatened sanctions to retaliate. The magistrate fabricated abstention without jurisdiction. Counsel and the judge misbranded specific objections as "generalized." The Clerk seized judicial power and froze briefing. Judges withheld rulings, concealed motions, and left the record to speak through silence. Counsel

revived sanctions in a closed case to falsely smear Plaintiff's character. The panel repeated false narratives and stamped them "Not Precedential." The Judicial Council dismantled oversight.

These were coordinated moves in a "deliberately planned and carefully executed scheme" (*Hazel-Atlas*, 322 U.S. at 246), carried out in concert by clerks, counsel, magistrates, and judges. Their common purpose was not simply to defeat a litigant, but to draw both the district court and the Court of Appeals into issuing decrees that were not true exercises of Article III power. Officers laundered fraud into the record until what emerged looked like adjudication but lacked its substance. The tribunals lent their authority to deception, speaking through clerk fiat, omissions, and false narratives.

This was an assault on the judicial process itself, on the rule of law, and on the promise that constitutional claims will be heard openly and honestly in federal court. It was an attack on the safeguard of liberty: the guarantee that justice will not be displaced by performance and pretense. Step by step, officers engaged in misconduct, acted with intent, directed their acts at the tribunal, and deceived the judicial process — the very four elements of fraud on the court in *Herring v. United States*, 424 F.3d 384, 386–87 (3d Cir. 2005).

The result is not a lawful judgment. It is a void decree that defiled the Court itself and undermined the public's trust in justice as the foundation of liberty.

# V. A REPEATED SCHEME OF FRAUD ON THE COURT

The fraud on the court are not unique to this case but recur across Plaintiff's other actions, confirming that the fraud was systemic, not accidental. The same devices were deployed across multiple cases and forums, confirming intentional design rather than coincidence.

**Rule.**

Fraud on the court may be shown by evidence of an "unconscionable plan or scheme designed to improperly influence the court in its decision" (*Toscano*), and is reserved for "only the most egregious misconduct" (*Rozier*). The Third Circuit requires proof that intentional misconduct by officers deceives or corrupts the judicial process, preventing impartial adjudication (*Herring*). Repetition across proceedings confirms that such judgments are "not within the powers granted by law" and therefore void (*Marshall*).

**Application.**

The same devices recur across Plaintiff's cases, showing deliberate design:

- **MDPA No. 1:24-cv-14 → 3d Cir. No. 24-2934**. Jurisdiction collapsed into merits under Rule 12(b); abstention fabricated without parallel proceedings; specific objections relabeled as "general" to evade de novo review; Clerk froze briefing and engineered the appellate record; panel concealed objections in a "not precedential" memorandum.

- **EDPA No. 5:24-cv-5338 → 3d Cir. No. 25-2570**. Judge Leeson dismissed constitutional claims simultaneously under Rule 12(b)(1) and Rule 12(b)(6), violating *Steel Co.* sequencing; on appeal, the Clerk issued an ultra vires "jurisdiction defect" letter (3d Cir. ECF 7), steering the case without judicial authority.

- **EDPA No. 5:25-cv-4633 (Judicial Council Challenge)**. Judge Leeson dismissed sua sponte under Rule 12(h)(3) while also addressing merits — a structural contradiction — and the very judges named in the misconduct complaints sat in judgment, compounding the defect.

**Conclusion.**

The recurrence of identical devices across multiple cases and forums corroborates intentionality and egregiousness. These are not isolated mistakes but coordinated tactics constituting an "unconscionable scheme" (*Toscano*) and the kind of "most egregious misconduct" (*Rozier*) that the Third Circuit recognizes as fraud on the court under *Herring*. By replicating the same mechanisms to suppress constitutional claims and insulate judicial officers from oversight, the judiciary itself has corrupted the tribunal. The resulting judgments are void ab initio under *Marshall* and Rule 60(d)(3). Because these recurring devices confirm a deliberate and unconscionable scheme, the Court not only has the authority but the duty to vacate them and restore integrity to its proceedings.

## VI. RELIEF REQUESTED

WHEREFORE, Appellant respectfully requests that the Court:

1. Vacate all judgments in the district court and the Third Circuit in Case No. 24-2934 as void for fraud on the court (*Hazel-Atlas*; *Marshall*; *Espinosa*).

2. Restore the action to the docket for adjudication consistent with *Steel Co.* and *Mortensen*, and reassign to an untainted tribunal to preserve impartiality (*Hazel-Atlas*).

3. Declare the judgments void ab initio and without claim- or issue-preclusive effect in any future litigation (*Marshall*; *Espinosa*).

4. Order structural relief to prevent recurrence, including directives that:

   o Clerks of court may not issue jurisdictional rulings or defect letters under FRAP 45(b);

   o Judges may not resolve dispositive motions or constitutional claims through chambers fiat absent adversarial process;

   o All jurisdictional and dispositive rulings must occur on the public record after adversarial process, with an express prohibition on ex parte communications (*In re Kensington*; *Offutt*; *Hazel-Atlas*).

5. Grant such other relief as justice requires to restore integrity to the judicial process and ensure that constitutional claims are adjudicated on their merits (*Hazel-Atlas*; *Universal Oil*).

6. Award compensatory costs and economic relief necessary to remedy the harms caused by the fraud on the court, including shifting the costs of the proceedings to the officers responsible (*Universal Oil*; *Sprague*; *Chambers*).

**Closing.**

This Court must vacate the fraudulent judgments and purge the record, as a matter of duty. Fraud on the court "defiles the court itself" and produces decrees "not within the powers granted by law" (*Hazel-Atlas*, 322 U.S. at 246; *Marshall*, 575 F.2d at 422). Relief against such fraud is "not just a ceremonial gesture" but a judicial obligation to provide "all the relief necessary to correct the particular injustices involved" (*Hazel-Atlas*, 322 U.S. at 248–49). To leave these judgments standing would not preserve finality — it would ratify a scheme that corrupted the tribunal and undermined justice itself. The Court has both the power and the duty to act, and in this case, no discretion to do otherwise.

Respectfully submitted,
*/s/ Michael Miller*
MICHAEL MILLER
108 North Reading Road., Ste F, 246
Ephrata, Pennsylvania 17522
(717) 388-0163
reaganfive@protonmail.com
August 25, 2025

# CERTIFICATE OF SERVICE

I hereby certify that this day I caused to be served by e-filing a true and

correct copy of the foregoing document to the following:

Michael Scarinci
Appellate Litigation Section
Pa. Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 857-2184
mscarinci@attorneygeneral.gov

Sarah Hyser-Staub
PA I.D. No. 315989
100 Pine Street
Harrisburg, PA 17101
(717) 237-5473
sstaub@mcneeslaw.com

Date: August 25, 2025

Respectfully Submitted,
/s/*Michael Miller*
MICHAEL MILLER
108 North Reading Road., Ste F, 246
Ephrata, Pennsylvania 17522
(717) 388-0163
reaganfive@protonmail.com